EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO MARTÍNEZ GUERRA, acusado y apelante.

*Número:* CR-69-31    *Resuelto:* 24 de febrero de 1970

---

*Enrique Miranda Merced*, abogado del apelante; *Gilberto Gierbolini, Procurador General*, y *Peter Ortiz, Procurador General Auxiliar*, abogados de El Pueblo.

PER CURIAM: El apelante Francisco Martínez Guerra fue convicto de dos infracciones a la Ley de Narcóticos, por poseer y transportar y ocultar la droga narcótica heroína. Señala seis errores para solicitar la revocación de las sentencias que le fueron impuestas.

(1) Apunta que constituyó error la denegatoria de absolución perentoria por el cargo de transportar y ocultar la droga ya que no se presentó evidencia suficiente para sostenerlo. No le asiste la razón. La prueba demostró que mientras se procedía en una vía pública al arresto de Pedro Juan Fuentes Ocasio, el apelante, que se encontraba a dos o tres pies de distancia, dejó caer un sobre manila que contenía 25 sobres de una substancia que resultó ser heroína.[1] Como señalamos en *Pueblo* v. *Milán Cardona*, Cr-66-388, Sentencia de 31 de mayo de 1967, para que el acusado llegara a una vía pública teniendo en su posesión la droga, tuvo que haberla transportado y ocultado hasta allí. Véase, *Pueblo* v. *Martínez Ríos*, 89 D.P.R. 362 (1963).

---

[1] La defensa presentó el testimonio de Fuentes Ocasio para establecer que fue él y no el apelante quien lanzó el sobre a la acera. Esta versión no le mereció crédito al jurado.

(2) Se queja de que se insinuara ante el jurado que el acusado estaba relacionado con el negocio de drogas. Parte de una especulación. El agente había declarado que se dedicaba a la investigación de casos de infracción a la Ley de Drogas desde hacía trece años. Anteriormente había dicho que conocía al acusado "de antemano". El juez a quo no permitió que explicara el origen de su conocimiento. No se cometió error, y de todos modos, el mismo hecho surgió del testimonio del testigo de defensa Fuentes Ocasio.

■ (3) En sus instrucciones el juez indicó al jurado, refiriéndose al testimonio de Fuentes Ocasio, que una de las formas de impugnar un testigo es mediante prueba sobre convicción por delito grave. Aparte de que fue la defensa la que estableció que el testigo se encontraba recluido en prisión por violación a la Ley de Drogas, cualquier perjuicio que pudiera haberse causado al apelante se disipa al considerar que inmediatamente el juez dijo, "Ahora, eso no quiere decir que por el hecho en sí de que una persona haya estado en presidio su testimonio tenga que ser descartado por ese hecho. Queda siempre a la consideración de ustedes como juzgadores de los hechos, determinar el grado de veracidad que pueda merecerle ese testigo a ustedes, a pesar de haber sido convicto anteriormente de un delito grave." (T.E. págs. 122–123.)

■ (4) En *Pueblo* v. *Quiñones Torres*, 95 D.P.R. 659 (1968), aprobamos una instrucción al jurado similar a la que aquí se impugna al efecto de que el acusado tiene derecho a declarar o no, más aún, cuando se añade que el hecho de no declarar no debe considerarse como circunstancia incriminatoria, pues el fiscal tiene la obligación de establecer la culpabilidad fuera de duda razonable. Ello no constituye un comentario al silencio del acusado. *Griffin* v. *California*, 380 U.S. 609 (1965), no conduce a un resultado distinto.

■ (5) Señálase que una instrucción al efecto de que se presume que todo testigo dice la verdad es contraria a la

presunción de inocencia. La instrucción impugnada no se limitó a lo expuesto; el juez a quo acertadamente señaló que la presunción puede ser controvertida o descartada por la forma de declarar, el carácter del testimonio o por otra evidencia que afecte la veracidad, honradez e integridad o los motivos del declarante.[2] Véase, el art. 21 de la Ley de Evidencia, 32 L.P.R.A. sec. 1664.

(6) No habiéndose cometido los errores señalados no hay lugar a referirse a su efecto acumulativo para solicitar la revocación.

*Se confirmarán las sentencias dictadas por el Tribunal Superior, Sala de San Juan, en 29 de febrero de 1968.*

El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.

(2) Existe una marcada tendencia en los tribunales federales a abandonar esta instrucción. Véanse, *United States* v. *Safley*, 408 F.2d 603 (4th Cir. 1969); *United States* v. *Boone*, 401 F.2d 659 (3d Cir. 1968); *Marsh* v. *United States*, 402 F.2d 457 (9th Cir. 1968), aunque no se ha considerado que el trasmitirla al jurado es suficiente para producir la revocación.